**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SAIFULLAH KHAN,
Plaintiff,

v.

NICHOLAS J. UCCELLO, and SIX UNKNOWN NAMED AGENTS OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (DOES 1–6), each in an individual capacity,
Defendants.

No. 3:26-cv-01365 (VDO)

September 14, 2026

**PLAINTIFF'S OPPOSITION TO THE UNITED STATES' MOTION TO SUBSTITUTE PARTY (ECF NO. 2)**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. THIS IS "A CIVIL ACTION AGAINST AN EMPLOYEE OF THE GOVERNMENT . . . WHICH IS BROUGHT FOR A VIOLATION OF THE CONSTITUTION OF THE UNITED STATES," AND § 2679(b)(1) THEREFORE "DOES NOT EXTEND OR APPLY" TO IT. ..... 6

II. THE UNITED STATES' OWN PAPERS PLACE THIS ACTION INSIDE § 2679(b)(2) — AND REWRITE § 2679(d) TO AVOID THE CONSEQUENCE. 18

III. SUBSTITUTION WOULD NOT TRANSFER COUNTS I–III TO THE UNITED STATES; UNDER MEYER IT WOULD EXTINGUISH THEM — THE RESULT § 2679(b)(2)(A) EXISTS TO PREVENT. ..... 19

IV. SCOPE OF EMPLOYMENT NEED NOT BE DECIDED, AND THE GOVERNMENT'S SCOPE EMPHASIS ONLY CONFIRMS THAT THIS IS "A CIVIL ACTION AGAINST AN EMPLOYEE OF THE GOVERNMENT." ..... 22

V. NO CERTIFICATION ADDRESSES DEFENDANTS DOES 1–6, AND NO SUBSTITUTION CAN OCCUR AS TO THEM. ..... 24

CONCLUSION ..... 24


**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrus v. Glover Constr. Co.*, 446 U.S. 608 (1980) .......... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 15

*Baker v. McCollan*, 443 U.S. 137 (1979) .......... 8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) .......... 9

*Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) .......... 7, 15

*Carroll v. Trump*, 148 F.4th 110 (2d Cir. 2025) (per curiam), *petition for cert. filed sub nom. United States v. Carroll*, No. 26-142 (U.S. July 28, 2026) .......... 5

*Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600 (1979) .......... 7, 8, 11

*Cross v. Buschman*, No. 22-3194, 2024 WL 3292756 (3d Cir. July 3, 2024) .......... 15

*Duncan v. Walker*, 533 U.S. 167 (2001) .......... 9

*Egbert v. Boule*, 596 U.S. 482 (2022) .......... 15, 17

*FDIC v. Meyer*, 510 U.S. 471 (1994) .......... 2, 11, 20, 21

*Fountain v. Karim*, 838 F.3d 129 (2d Cir. 2016) .......... 5, 22

*Goldey v. Fields*, 606 U.S. 942 (2025) (per curiam) .......... 15

*Graham v. Connor*, 490 U.S. 386 (1989) .......... 8

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) .......... 5, 12, 20

*Hafer v. Melo*, 502 U.S. 21 (1991) .......... 23

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384 (7th Cir. 1984) .......... 16

*Henry v. Essex Cnty.*, 113 F.4th 355 (3d Cir. 2024) .......... 14

*Hernandez v. Mesa*, 589 U.S. 93 (2020) .......... 17

*Hui v. Castaneda*, 559 U.S. 799 (2010) .......... 6, 12, 13, 14, 16, 22

*McHugh v. Univ. of Vt.*, 966 F.2d 67 (2d Cir. 1992) .......... 5, 22

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986) .......... 10, 11

*Monroe v. Pape*, 365 U.S. 167 (1961) .......... 23

*Nielsen v. Watanabe*, No. 25-417 (U.S. cert. granted June 22, 2026) .......... 16, 17

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .......... 17

*Osborn v. Haley*, 549 U.S. 225 (2007) .......... 5, 12

*Quiñonez v. United States*, No. 3:22-cv-03195-WHO (N.D. Cal. Aug. 30, 2023), ECF No. 91, *appeal docketed*, No. 25-3386 (9th Cir.) .......... 15

*Rise v. Bagshaw*, No. 1:24-cv-02388-RCL (D.D.C. May 13, 2025), ECF No. 56 .......... 12

*Russello v. United States*, 464 U.S. 16 (1983)....9

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)....16

*Tanzin v. Tanvir*, 592 U.S. 43 (2020)....1, 12, 18, 23

*United States v. Classic*, 313 U.S. 299 (1941)....23

*United States v. Menasche*, 348 U.S. 528 (1955)....9

*United States v. Smith*, 499 U.S. 160 (1991)....passim

*United States v. Wong Kim Bo*, 472 F.2d 720 (5th Cir. 1972)....9

*Westfall v. Erwin*, 484 U.S. 292 (1988)....12, 23

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)....2, 14, 15, 17

**Statutes**

28 U.S.C. § 1346(b)....2, 20

28 U.S.C. § 2679....passim

28 U.S.C. § 2680....21

42 U.S.C. § 1983....7, 10, 11, 15, 23

42 U.S.C. § 233(a)....13, 14, 16

Conn. Pub. Act No. 26-14, § 1 (2026)....1, 3, 7, 18, 23

Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, § 2(b), 102 Stat. 4563, 4564....12

**Legislative Materials**

H.R. Rep. No. 100-700 (1988)....12

**Other Authorities**

Brief for the United States as Amicus Curiae Supporting Petitioner, *Nielsen v. Watanabe*, No. 25-417 (U.S. Aug. 21, 2026)....16, 17

## INTRODUCTION

The Westfall Act's exclusive-remedy provision "does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). This is that action. Mr. Khan sues Officer Uccello and six unnamed ICE agents, each in an individual capacity, on three counts. Each count is brought under Section 1 of Connecticut Public Act No. 26-14, and each is brought for one thing: the deprivation, under color of federal law, of rights secured by the Fourth and First Amendments. Compl. ¶ 29; Count One ¶ 34; Count Two ¶ 35; Count Three ¶ 36. There is no negligence count, no common-law tort count, no state-constitutional count. The Supreme Court, without dissent, has described the 1988 Act in a single sentence: it "foreclosed common-law claims for damages against federal officials, 28 U.S.C. § 2679, but it left open claims for constitutional violations and certain statutory violations. §§ 2679(b)(2)(A)–(B)." *Tanzin v. Tanvir*, 592 U.S. 43, 49 (2020). Congress left this action open. The United States's certification cannot close it.

The United States asks the Court to substitute itself as defendant anyway, on the theory that these counts are "state law claims." ECF No. 2 at 1. The notice of removal, the certification, the Notice of Substitution, and the tendered order never use the word "Constitution." They never cite § 2679(b)(2)(A). They render § 2679(d) with words Congress did not enact. And the one time they cite paragraph (b)(2) — the exception — it is as authority for dismissing Counts I–III. *See* Part II, *infra*. The only provision that speaks to this Complaint is the one that defeats substitution.

Substitution would not transfer these claims to a solvent defendant; it would extinguish them. The FTCA's liability provision "does not provide a cause of action" for a constitutional

tort claim, and "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994). The Supreme Court has read the exception as Congress's decision "not to substitute the Government as defendant in suits seeking damages for constitutional violations." *Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017). The motion asks the Court to do the one thing Congress decided not to do, and to do it under the very clause in which Congress said no. *See* ECF No. 2-2.

Part I sets out the text, structure, and history of § 2679(b)(2)(A) and the decisions construing it; Part II, the government's own papers; Part III, the consequence of substitution under *Meyer*. Scope of employment need not be decided (Part IV); and no certification addresses Defendants Does 1–6 (Part V).

## BACKGROUND

**A. The incident.** On May 9, 2025, Mr. Khan attended his scheduled hearing before an Immigration Judge on the sixth floor of the Abraham A. Ribicoff Federal Building in Hartford. His asylum application had then been pending for nearly nine years, and he had "appeared, voluntarily, at every court date in every proceeding that concerned him, for nine years." Compl. ¶ 8. As he left the courtroom, plain-clothes officers who "displayed no badge, no uniform, and no visible insignia of office" closed on him; he fled toward the courtroom, calling for the judge; and he was struck from behind with Taser probes — seven discharges, fired at roughly the same moment — and fell as his muscles seized, struck his head, and lost consciousness. Compl. ¶¶ 12–22. The government's own arrest record concedes that "Subject has no criminal history" and that "KHAN was acquitted of those charges." Compl. ¶ 3. Officers later spoke of the Immigration Judge, who had demanded to know why they were doing this, as a "traitor." Compl. ¶ 23. The United States has since granted Mr. Khan asylum. Compl. ¶ 26.

**B. The action.** On July 10, 2026, Mr. Khan sued Officer Uccello and six unidentified ICE agents, each in an individual capacity, in the Connecticut Superior Court. The Complaint pleads three counts, each brought under Section 1 of Substitute Senate Bill No. 397, Public Act No. 26-14, and each brought for the deprivation of rights secured by the United States Constitution. Section 1 provides that "[e]very person, including a federal or state officer or employee who, under color of any statute, ordinance, regulation, custom or usage, of the United States or the state of Connecticut, subjects, or causes to be subjected, any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the United States Constitution, shall be liable to the party injured in an action at law or other proper proceeding for redress." P.A. 26-14, § 1(a). Count One pleads Fourth Amendment excessive force; Count Two, Fourth Amendment unreasonable seizure; Count Three, First Amendment retaliation. Each count incorporates the allegation that every defendant "acted under color of the statutes, regulations, customs and usages of the United States within the meaning of Section 1(a) of the Act, and subjected the plaintiff . . . to the deprivation of rights secured by the United States Constitution." Compl. ¶ 29. The statute directs that courts construing it "shall be guided by interpretations given by federal and state courts to 42 USC 1983," and it preserves for every defendant "any applicable immunities or defenses under federal or state law." § 1(c).

**C. The removal and the motion.** On August 25, 2026 — the state-court return date — the United States removed on the sole asserted authority of 28 U.S.C. § 2679(d)(2), filing a certification that Officer Uccello "was acting within the scope of federal office or employment at the time of the incident . . . ." ECF No. 1-1 at 2. The certification names no other defendant. The notice of removal recites that the Complaint alleges Officer Uccello was an ICE officer "acting

under color of federal law," ECF No. 1 ¶ 3, and states that the United States "has been substituted . . . for all claims for which the FTCA provides the exclusive remedy," ECF No. 1 ¶ 8. The Notice of Substitution declared that "[t]hese claims arise under Connecticut law," ECF No. 2 ¶ 1, and labeled them "state law claims," *id.* at 1–2. It tendered a proposed order that would dismiss all of Counts I–III "with respect to defendant Nicholas J. Uccello," ECF No. 2-2, which the Notice described as an order "amending the caption," ECF No. 2 at 2. The government also moved to dismiss, asserting that the counts "were automatically converted into claims against the United States under the Federal Tort Claims Act" and seeking dismissal for want of administrative exhaustion. ECF No. 3-1 at 3. The Court struck that motion because the government had not requested the pre-filing conference the Court's Pretrial Preferences require, a failure the Court attributed to "no fault of [i]ts own." ECF No. 14. The same Order refers to the Notice of Substitution as a Motion to Substitute Party and directs Mr. Khan to file either an opposition or a notice of consent. *Id.*

**D. The related action.** In *United States v. Connecticut*, No. 3:26-cv-00758 (VDO), the United States challenges Sections 3 through 6 of the same Act under the Supremacy Clause. It has not challenged Section 1, while "reserv[ing] the right to bring additional challenges in the future." ECF No. 58 at 1 & n.2 (No. 3:26-cv-00758) (quoting the United States' complaint, ECF No. 1 at 2 n.1 (No. 3:26-cv-00758)). Mr. Khan moved to intervene on July 23, 2026, to defend Section 1. The United States and the State opposed, ECF Nos. 52, 53 (No. 3:26-cv-00758), and on August 27, 2026 — noting that this action "was removed to the District of Connecticut on August 25, 2026, and is proceeding under Docket No. 26-CV-1365," ECF No. 58 at 2 (No. 3:26-cv-00758) — this Court denied the motion, *id.* at 7.

## LEGAL STANDARD

A scope certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). *Lamagno* adopted the construction the Attorney General had urged: Congress "spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution," and "made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution," so that the certification "is by statute made the first, but not the final word" on substitution. *Id.* at 432 (setting out the construction urged by the petitioners and the Attorney General); *see id.* at 437 (O'Connor, J., concurring in part and concurring in the judgment) (agreeing "with the Court (and the Attorney General)" that certifications "should be judicially reviewable"). *See Osborn v. Haley*, 549 U.S. 225, 242 (2007) (§ 2679(d)(2) "does not preclude a district court from resubstituting the federal official as defendant *for purposes of trial* . . . .") (emphasis in original); *Carroll v. Trump*, 148 F.4th 110, 113 (2d Cir. 2025) (per curiam) ("Certification is conclusive for purposes of the removal to federal court, but the question of substitution is subject to judicial review.").

In this Circuit the certification is reviewed de novo. *McHugh v. University of Vermont*, 966 F.2d 67, 72 (2d Cir. 1992). Where scope itself is disputed, that review "is triggered by the government's motion for substitution and opposition papers from the plaintiff that allege with particularity facts relevant to the scope-of-employment issue," *id.* at 74, and an evidentiary hearing resolves genuine disputes of material *fact*, *see Fountain v. Karim*, 838 F.3d 129, 134, 137–38 (2d Cir. 2016). None of that is needed here, because this motion turns on the statute's coverage, not on scope. Mr. Khan does not concede that Officer Uccello acted within the scope of his employment; for purposes of this motion only, he assumes it *arguendo*. *See* Part IV, *infra*.

The motion therefore presents a pure question of statutory interpretation — whether an action whose every count is brought for a violation of the United States Constitution falls within § 2679(b)(2)(A) — and can be decided on the papers, without discovery, a hearing, or any scope finding at all. That inquiry "begins and ends with the text." *Hui v. Castaneda*, 559 U.S. 799, 805 (2010).

## ARGUMENT

### I. THIS IS "A CIVIL ACTION AGAINST AN EMPLOYEE OF THE GOVERNMENT . . . WHICH IS BROUGHT FOR A VIOLATION OF THE CONSTITUTION OF THE UNITED STATES," AND § 2679(b)(1) THEREFORE "DOES NOT EXTEND OR APPLY" TO IT.

Each element of § 2679(b)(2)(A) is satisfied on the face of the Complaint. The consequence follows from the text: paragraph (1) does not extend or apply to this action, and no certification can substitute the United States as defendant, whatever the scope of Officer Uccello's employment.

**A. The text.** Section 2679(b)(1) makes the FTCA remedy exclusive for claims of "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission" of a federal employee acting within scope. Paragraph (2) then provides:

> Paragraph (1) does not extend or apply to a civil action against an employee of the Government—
> (A) which is brought for a violation of the Constitution of the United States, or
> (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

28 U.S.C. § 2679(b)(2).

This is "a civil action," which is what Section 1 supplies: liability "in an action at law or other proper proceeding for redress." It is "against an employee of the Government" — Officer Uccello, "an employee of U.S. Immigration and Customs Enforcement," ECF No. 1 ¶ 2, whose scope of employment the government has certified, ECF No. 1-1 at 2. And it is "brought for a

violation of the Constitution of the United States." The deprivation of federal constitutional rights is not the backdrop of these counts but their pleaded element — the thing without which no count states a claim. "If Congress had meant to limit that exception to *Bivens* suits, it might have said 'suits arising under the Constitution,' not suits 'brought for' constitutional violations." *Buchanan v. Barr*, 71 F.4th 1003, 1017 (D.C. Cir. 2023) (Walker, J., concurring). Judge Walker identified two readings of the phrase: a broad one, under which "brought for" describes "the goal of a suit, not the cause of action," and a narrower one, under which an action is "brought for a violation of the Constitution" "if a constitutional violation is part of the plaintiff's cause of action." *Id.* at 1016. Mr. Khan does not rely on the broader reading. On the narrower one, Counts I–III qualify on their face, because a constitutional violation is not merely part of the cause of action but the whole of it.

Section 1's design confirms the point. The statute is modeled, clause for clause, on 42 U.S.C. § 1983, and it directs that courts construing it "shall be guided by interpretations given by federal and state courts to 42 USC 1983." § 1(c). A statute built on that model supplies a forum and a remedy; the *right* sued upon — and therefore the violation the action is "brought for" — is constitutional. Section 1983, the Supreme Court has explained, "did not provide for any substantive rights—equal or otherwise. As introduced and enacted, it served only to ensure that an individual had a cause of action for violations of the Constitution . . . ." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). As Senator Edmunds "recognized in the 1871 debate," "[a]ll civil suits, as every lawyer understands, which this act authorizes, are not based upon it; they are based upon the right of the citizen. The act only gives a remedy." *Id.* at 617–18 (quoting Cong. Globe, 42d Cong., 1st Sess. 568 (1871) (remarks of Sen. Edmunds)). Because § 1983 "is not itself a source of substantive rights," but merely provides "a method for

vindicating federal rights elsewhere conferred," the analysis of an excessive-force claim "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

That is how the Complaint is pleaded. Counts One and Two plead the Fourth Amendment's objective-reasonableness standard as the wrong sued upon, Compl., Count One ¶ 32 ("objectively unreasonable, in violation of the Fourth Amendment"); Count Two ¶ 33 ("an unreasonable seizure in violation of the Fourth Amendment"), measured by the factors *Graham* prescribes, 490 U.S. at 396; *see* Compl., Count One ¶ 30 (pleading each). Count Three pleads First Amendment retaliation. Each count closes by pleading injury "in violation of Section 1 of the Act and the Fourth [or First] Amendment." Count One ¶ 34; Count Two ¶ 35; Count Three ¶ 36. That pairing names one wrong, not two: because a statute of this kind "by itself does not protect anyone against anything," *Chapman*, 441 U.S. at 617, the only violation a Section 1 count can plead is the constitutional one. This Court and the State of Connecticut have each described Section 1 in those terms — a right of action "against federal officials for constitutional violations." ECF No. 58 at 2 (No. 3:26-cv-00758); ECF No. 52 at 1 n.1 (No. 3:26-cv-00758). That is this suit.

**B. The structure.** Congress knew how to condition an exception on the source of the cause of action, because it did so in the very next subparagraph: (b)(2)(B) reaches only actions brought for violation of a federal statute "*under which such action against an individual is otherwise authorized*" (emphasis added). Subparagraph (A) contains no such clause. Both subparagraphs use the same predicate — "brought for a violation of" — and in each the object names the law *violated*; only (B) adds a second requirement addressed to the law that *authorizes*

the action. Where Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Had Congress intended to confine subparagraph (A) to actions the Constitution itself authorizes, "it presumably would have done so expressly as it did in the immediately following subsection . . . ." *Id.*

The *Bivens*-only reading the government must be taken to press — subparagraph (A) silently limited to actions "arising under" the Constitution, that is, to actions under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) — does three things the text forbids. It writes (B)'s omitted clause into (A). It reads "brought for" as "brought under." And, because an action "brought under" a statute's own cause of action is necessarily one the statute "authorize[s]," it leaves (B)'s authorization clause with little to do, contrary to the duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). Reading "brought for a violation of" the same way in both subparagraphs — as naming the law violated — is the only reading on which (B)'s second clause has independent work. Nor is the asymmetry accidental. The Constitution binds every federal officer directly, so a constitutional violation is a complete wrong whatever remedial vehicle carries the claim; a federal statute may or may not contemplate individual liability, which is why Congress asked in (B), and only in (B), whether the statute "otherwise authorize[s]" the action.

The Supreme Court has already read the neighboring exception exactly this way. In *United States v. Smith*, 499 U.S. 160, 174 (1991), the Court applied "the plain language of

§ 2679(b)(2)(B)" to a malpractice claim and asked one question — whether the claim was "brought for a violation of" the federal statute invoked. It held that it was not, because "[n]othing in the Gonzalez Act imposes any obligations or duties of care upon military physicians," so that "a physician allegedly committing malpractice under state or foreign law does not 'violate' the Gonzalez Act." *Id.* The Court expressly left open "whether a tort claim brought under state or foreign law could be deemed authorized by the Gonzalez Act," *id.* — reserving, that is, whether a claim under state law could satisfy subparagraph (B)'s authorization element — and it noted that the legislative history "fails to disclose (and neither we nor the dissent has attempted to discover) what causes of action Congress sought to preserve when it enacted § 2679(b)(2)(B)," *id.* The exception's scope was fixed by its words, not by the drafters' inventory of existing remedies. The "violation" the exception asks about is thus a violation of the law that imposes the duty. Here that law is the Constitution: Section 1, like § 1983, supplies no substantive right of its own, and the only duty a Section 1 plaintiff can plead was breached is a constitutional one. *Smith* also supplies the governing discipline: "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id.* at 167 (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)). Mr. Khan asks the Court to imply nothing; he invokes an exception Congress enacted, by its terms. It is the government that would imply an unenacted limitation — "arising under," or "*Bivens*" — into it.

The government may answer that the Constitution figures in Section 1 only as an incorporated standard, so that the action is "really" brought for a violation of the state statute. That is the same move in jurisdictional dress. It imports the arising-under learning of *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), into a provision Congress framed

in non-jurisdictional terms. "Arising under" is a term of art administered through the well-pleaded-complaint rule to decide which court hears a case, *id.* at 808; § 2679(b)(2)(A) allocates nothing between court systems, and it operates identically in the Superior Court where this action was filed and in this Court. *Merrell Dow* concluded that a congressional decision to withhold a federal remedy for violation of a federal *statute* "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814. Every premise is inverted here: the law violated is the Constitution, not a statute; the relevant congressional judgment is an express decision to *preserve* the action, not to withhold a remedy; and the question is exclusivity, not jurisdiction. Subparagraph (A) asks what the action is brought *for*, and the Supreme Court has said what the answer is for a claim like this one: "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Meyer*, 510 U.S. at 478. *Chapman* drew the very line the two subparagraphs draw: a remedial statute of the § 1983 type answers whether a suit is "authorized by law," but it "cannot" answer what right the suit is brought to redress, "since by its terms, as well as its history, it does not provide any rights at all." 441 U.S. at 618.

Nor can Section 1(c)'s preservation of "any applicable immunities or defenses under federal or state law" supply the substitution the Westfall Act withholds. Whether § 2679(b)(1) is an "applicable" federal defense to this action is the very question presented, and the federal statute answers it: paragraph (1) "does not extend or apply" to this action. A savings clause preserves defenses that exist; it does not enlarge them.

**C. The history: the Act displaced common-law tort claims and "left open claims for constitutional violations."** The decision Congress overrode in 1988 was "a state-law tort suit

against petitioners, federal employees in the Executive Branch, . . . ." *Westfall v. Erwin*, 484 U.S. 292, 293 (1988). A unanimous Court there reaffirmed that "official immunity comes at a great cost" and that "absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct," *id.* at 295, and invited "[l]egislated standards governing the immunity of federal employees involved in state-law tort actions," *id.* at 300. Congress answered within the year, and it said what it was doing. The Act's stated purpose is to "protect Federal employees from personal liability for common law torts committed within the scope of their employment." Pub. L. No. 100-694, § 2(b), 102 Stat. 4563, 4564 (1988) (quoted in *Lamagno*, 515 U.S. at 426). The exclusive-remedy provision "is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment." H.R. Rep. No. 100-700, at 6 (1988) (quoted in *Smith*, 499 U.S. at 167 n.9); *see Smith*, 499 U.S. at 173 n.16 (quoting the same sentence with the Court's emphasis on "all"). The same Report said in terms that the Act "would not affect the ability of victims of constitutional torts to seek personal redress from Federal employees who allegedly violate their Constitutional rights." H.R. Rep. No. 100-700, at 6 (quoted in *Rise v. Bagshaw*, No. 1:24-cv-02388-RCL, slip op. at 31 (D.D.C. May 13, 2025), ECF No. 56). The Supreme Court has described the enacted result the same way three times: the Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties," *Osborn*, 549 U.S. at 229; it made the FTCA "the exclusive remedy for most claims against Government employees arising out of their official conduct," *Hui*, 559 U.S. at 806; and it "foreclosed common-law claims for damages against federal officials . . . but it left open claims for constitutional violations," *Tanzin*, 592 U.S. at 49. To the extent the Report describes constitutional torts by reference to *Bivens*, it names the

vehicle then in use, not the boundary of the class preserved: the promise runs to "victims of constitutional torts" as such, and the enacted text speaks more broadly still. In any event, legislative history cannot subtract from unambiguous text — least of all history whose operative description matches the text.

**D. *Smith* and *Hui* describe the paradigm case; they do not confine the exception to it.** To be sure, *Smith* said that the FTCA "is *not* the exclusive remedy for torts committed by Government employees in the scope of their employment when an injured plaintiff brings: (1) a *Bivens* action, seeking damages for a constitutional violation by a Government employee; or (2) an action under a federal statute that authorizes recovery against a Government employee." 499 U.S. at 166–67 (emphasis in original). *Hui* spoke of "[t]he Westfall Act's explicit exception for *Bivens* claims." 559 U.S. at 807. But neither case involved an enacted constitutional cause of action, and neither construed the words "brought for": *Smith*'s only construction of the shared phrase — in subparagraph (B) — asked whether the law named was one the defendant could "violate," 499 U.S. at 174. *Smith* was a malpractice suit brought "under California law, Italian law, and 'general American principles of law,'" 499 U.S. at 162 n.1, with no constitutional claim before the Court at all; it decided "whether the Liability Reform Act immunizes Government employees from suit even when an FTCA exception precludes recovery against the Government," *id.* at 165. The only constitutional claims in *Hui* were "*Bivens* claims against petitioners for deliberate indifference to [the decedent's] serious medical needs," 559 U.S. at 803, and the question was whether 42 U.S.C. § 233(a) admits an implied constitutional exception. Each opinion described the vehicle then in view.

The same opinions also describe the clause by what the action seeks, not by its vehicle. *Smith*'s gloss is functional — an action "seeking damages for a constitutional violation by a

Government employee," 499 U.S. at 167 — which is exactly what Counts I–III seek. *Hui*'s first description of the clause is "an exception for constitutional violations," followed by the statutory text. 559 U.S. at 807. Two pages later the Court used both descriptions on a single page — "the Westfall Act's exception for claims 'brought for a violation of the Constitution of the United States'" and "the Westfall Act's *Bivens* exception" — while rejecting an argument that the clause reaches § 233(a) immunity, on the ground that § 2679(b)(2)(A) "by its terms applies only to the specific immunity set forth in '[p]aragraph (1).'" *Id.* at 809. That is the only construction of the clause the Court has announced, and it is one of text, not of label. *Ziglar* likewise described the clause by the wrong sued for, not the vehicle, citing § 2679(b)(2)(A) as "providing that certain provisions of the Federal Tort Claims Act do not apply to any claim against a federal employee 'which is brought for a violation of the Constitution.'" 582 U.S. at 134.

**E. The Court of Appeals decisions.** No court of appeals has adopted the government's reading over adversarial briefing. The Third Circuit has stated it, in a single paragraph: *Henry v. Essex County*, 113 F.4th 355, 364 (3d Cir. 2024), that records that the plaintiff "offered no counterargument in her papers or at oral argument," *id.*, and whose footnote records that "Judge Porter does not join this paragraph holding that Henry lacks a converse-1983 cause of action under New Jersey law" and that he "is not confident that the Westfall Act bars suits 'brought for a violation of the Constitution of the United States' like Henry's," *id.* at 364 n.7. A holding announced without counterargument, over a panel member's stated doubt, binds the Third Circuit; its force elsewhere is that of its reasoning, which rests on the *Smith*/*Hui* shorthand. Several district courts have applied the same shorthand to common-law torts and to claims under California's Bane Act — a statute reaching interference "by threat, intimidation, or coercion" with rights secured by the federal Constitution "or . . . the Constitution or laws of this state" —

holding, without construing the words "brought for," that such a claim "is neither a *Bivens* action nor an action brought under a federal statute, and thus would be futile under *Smith*." *Quiñonez v. United States*, No. 3:22-cv-03195-WHO, slip op. at 3–4 (N.D. Cal. Aug. 30, 2023), ECF No. 91, *appeal docketed*, No. 25-3386 (9th Cir.). None involved a statute that, like Section 1, is modeled on § 1983 clause for clause, adopts § 1983's construction by its terms, and makes the deprivation of a right secured by the United States Constitution the only wrong it redresses. *Cf. Cross v. Buschman*, No. 22-3194, 2024 WL 3292756, at *5 n.12 (3d Cir. July 3, 2024) (nonprecedential) (Matey, J., concurring) (observing, "[a]s Judge Walker has explained," that reading § 2679(b)(2)(A) "to permit state tort actions for federal constitutional injuries" "finds support in the text of the statute" (quoting *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring))). Judge Walker asked that the Act receive "close attention in an appropriate case," *Buchanan*, 71 F.4th at 1017; this is one. The Ninth Circuit has calendared *Quiñonez*, No. 25-3386, for argument; Mr. Khan will promptly notify the Court of any decision and welcomes supplemental briefing should one issue.

**F. The *Bivens*-only reading would leave the exception with almost nothing to preserve, and the objection that a cause-of-action reading would let States nullify the Act mistakes the statute's design.** What has changed since 1991 and 2010 is that the Supreme Court has sharply narrowed the judge-made remedy. Expanding *Bivens* "is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Court has "declined 11 times to imply a similar cause of action," *Egbert v. Boule*, 596 U.S. 482, 486 (2022), and in *Egbert* itself refused to do so for Fourth Amendment excessive-force and First Amendment retaliation claims against a Border Patrol agent — the claims pleaded here, *id.* It has summarily reversed a court of appeals for recognizing a new one. *Goldey v. Fields*, 606 U.S.

942, 945 (2025) (per curiam) ("For the past 45 years, this Court has consistently declined to extend *Bivens* to new contexts."). And it has granted certiorari to decide "[w]hether the Ninth Circuit here erred in recognizing a *Bivens* cause of action," in a case in which the United States, as amicus, asks the Court to recognize "*Carlson*'s obsolescence." *Nielsen v. Watanabe*, No. 25-417 (U.S.) (cert. granted June 22, 2026; argument set for Nov. 9, 2026); Brief for the United States as Amicus Curiae Supporting Petitioner at 28, *Nielsen*, No. 25-417 (U.S. Aug. 21, 2026). The government's papers here nowhere concede that any *Bivens* remedy exists for Mr. Khan's claims. On the *Bivens*-only reading, then, the clause in which Congress "expressly" limited the immunity it was creating, *Smith*, 499 U.S. at 173, would today preserve a vanishing class. It would shrink through the interaction of two things Congress never enacted: the decline of a judge-made remedy and the gloss of a litigating position. Statutes are not repealed by obsolescence.

The *Bivens*-only reading is not in the text, and its consequence — an express statutory exception whose reach is set by the Judiciary's willingness to imply remedies rather than by Congress's words — is a reason to doubt the interpolation, not to accept it. The Supreme Court has rejected the premise that an FTCA exclusive-remedy provision is frozen to the causes of action its drafters had in view: language making the FTCA remedy "exclusive of any other civil action" "easily accommodates both known and unknown causes of action." *Hui*, 559 U.S. at 806 (construing 42 U.S.C. § 233(a)). What is true of the rule is true of its express exception. That a statute "has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir. 1984)). For "it is ultimately the provisions of our laws rather than the principal

concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). Congress in 1988 could have written "*Bivens*"; it enacted "a civil action . . . brought for a violation of the Constitution of the United States" instead.

Nor does the *Bivens* case law support the gloss. Its premise is institutional: "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts," *Egbert*, 596 U.S. at 486, because the "most important question" is "who should decide whether to provide for a damages remedy, Congress or the courts?" *Hernandez v. Mesa*, 589 U.S. 93, 114 (2020) (quoting *Ziglar*, 582 U.S. at 135) (internal quotation marks omitted). Mr. Khan embraces that premise. He asks this Court to take no "significant step under separation-of-powers principles," *Ziglar*, 582 U.S. at 133, but to read two enacted texts: a legislature prescribed the cause of action, and Congress prescribed the preservation. Nothing in this case is implied. The only implication on the table is the government's — an unwritten "*Bivens*" limitation on a clause Congress wrote in terms of what an action is brought for. The government will answer with *Hernandez*'s observation that § 2679(b)(2)(A) "simply left *Bivens* where it found it," 589 U.S. at 111 n.9 — a line the Solicitor General repeated to the Supreme Court on August 21, 2026, in urging that the Westfall Act, its constitutional exception included, "is neutral toward *Bivens*." Brief for the United States as Amicus Curiae Supporting Petitioner at 28, *Nielsen*, No. 25-417. Mr. Khan agrees. *Hernandez* described the clause in the statute's own words — the Act "also permits claims 'brought for a violation of the Constitution'" — and observed, in answer to an amicus who read the clause as a mandate for "a robust enforcement of *Bivens* remedies," that it "is not a license to create a new *Bivens* remedy in a context we have never before addressed." 589 U.S. at 111 n.9. The dissent called the same clause "an exception for *Bivens* suits" while quoting its text, *id.* at 129 (Ginsburg, J., dissenting); no Justice was asked whether an enacted

cause of action falls within it. A statute whose constitutional exception is "neutral toward *Bivens*" cannot mean nothing but *Bivens*.

The government may warn that this reading would let state legislatures nullify the Westfall Act. It would not. Section 2679(b)(2)(A) does not let a State opt its torts out of the Act: a claim sounding in negligence, battery, or any other common-law theory remains within paragraph (1) whatever its label and whatever its motive, because no constitutional violation is an element of it. The exception reaches only actions brought for violations of the federal Constitution — conduct federal law already forbids to every federal officer — and as to that class the Westfall Act itself withholds exclusivity. In such actions the officer retains every defense federal law affords, including any applicable immunity, *see* P.A. 26-14, § 1(c), and the United States remains free to contest the statute's validity, as it is doing as to other sections in No. 3:26-cv-00758, in an appropriate proceeding. Policy objections to the exception's reach belong to another branch. When the government asked the Supreme Court "to create a new policy-based presumption against damages against individual officials," the Court answered that "we are not at liberty to do so": "there may be policy reasons why Congress may wish to shield Government employees from personal liability, and Congress is free to do so," but "[o]ur task is simply to interpret the law as an ordinary person would." *Tanzin*, 592 U.S. at 52. Congress exercised that freedom in 1988, and in the same subsection it wrote the exception that governs this case. What the Act does not give the government is the power to convert a preserved constitutional action into a claim no court may hear.

## II. THE UNITED STATES' OWN PAPERS PLACE THIS ACTION INSIDE § 2679(b)(2) — AND REWRITE § 2679(d) TO AVOID THE CONSEQUENCE.

Three features of the government's own papers show as much.

*First*, the notice of removal states that the United States "has been substituted . . . for all claims for which the FTCA provides the exclusive remedy." ECF No. 1 ¶ 8. That formulation assumes its conclusion; on the government's own authorities, the FTCA provides no remedy for the only wrong the Complaint pleads. *See* Part III, *infra*.

*Second*, the Notice of Substitution renders § 2679(d) as providing that "any civil action or proceeding commenced upon such a claim *and arising under state law* shall be deemed an action against the United States, and the United States shall be substituted as the defendant with respect to those claims." ECF No. 2 ¶ 3 (emphasis added). The italicized words appear nowhere in § 2679(d)(1) or (d)(2). The statute deems the *action* one against the United States and substitutes the United States as party defendant; the government's rendition inserts a claim-splitting "arising under state law" limitation Congress did not write — and that interpolation is the motion's entire theory.

*Third*, the proposed order would dismiss "all claims set forth in the Complaint (Counts I-III)" "pursuant to the provisions of 28 U.S.C. § 2679(b)(2) and § 2679(d)." ECF No. 2-2. Section 2679(b)(2) is the *exception* — the provision under which paragraph (1) "does not extend or apply" to constitutional actions. The only provision the proposed order cites as authority for dismissal is the one under which these claims are preserved.

The word "Constitution" appears nowhere in ECF Nos. 1, 1-1, 2, or 2-2. A motion that would convert three constitutional counts into "state law claims" without once naming the Constitution has not engaged the statute.

## III. SUBSTITUTION WOULD NOT TRANSFER COUNTS I–III TO THE UNITED STATES; UNDER *MEYER* IT WOULD EXTINGUISH THEM — THE RESULT § 2679(b)(2)(A) EXISTS TO PREVENT.

If substitution were granted, the action would be "deemed" one against the United States under the FTCA. But the FTCA reaches only claims for which the United States "would be liable

to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and "the 'law of the place' means law of the State — the source of substantive liability under the FTCA." *Meyer*, 510 U.S. at 478. A constitutional tort claim "is not 'cognizable' under § 1346(b) because it is not actionable under § 1346(b) — that is, § 1346(b) does not provide a cause of action for such a claim." *Id.* at 477. "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right," and so "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.* at 478. The government's stricken motion confirms the sequence it has in view: substitution, followed at once by a motion to dismiss the claims it says "were automatically converted into claims against the United States under the Federal Tort Claims Act." ECF No. 3-1 at 3 (stricken, ECF No. 14). Whether the FTCA supplies any remedy for the constitutional wrong actually pleaded is the question that motion never reached. The Supreme Court has described the endpoint plainly: after substitution "the plaintiff may be left without a tort action against any party," and "[w]hen the United States retains immunity from suit, certification disarms plaintiffs" at no cost to the Treasury. *Lamagno*, 515 U.S. at 420, 427, 429. The "exclusive remedy" tendered in exchange for the claims against Officer Uccello is, by the government's own controlling authority, no remedy.

The reply should therefore answer one question: does the FTCA provide any remedy for a deprivation of rights secured by the Constitution — the only wrong the Complaint pleads? If yes, the government must explain *Meyer*. If no, then the government is asking this Court to read a clause Congress enacted to preserve constitutional claims as the instrument of their extinguishment. Whether some unpleaded common-law theory could state an FTCA claim after administrative exhaustion is not before the Court, and Mr. Khan takes no position on that

question here; it is irrelevant to the statutory one. Section 2679(b)(2)(A) preserves the *action* brought for constitutional violations, and Congress does not extinguish a preserved action because a different one might be assembled from the same events. On that logic the exception would never operate — some tort theory can always be imagined — and the clause would be read out of the Act. Mr. Khan pleads no FTCA claim and seeks nothing from the United States in this action, and nothing in this opposition waives, elects against, or abandons any other claim or remedy.

*Smith* does not bridge the gap. *Smith* held that Westfall immunity attaches to claims *within* paragraph (b)(1) even when an FTCA exception bars recovery against the United States, 499 U.S. at 165–66 — a holding about the consequences of coverage. The foreclosure *Smith* accepted was one Congress built into the Act: by subjecting substituted actions to the FTCA's "limitations and exceptions," 28 U.S.C. § 2679(d)(4), Congress "recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether," 499 U.S. at 166 — a holding the Court framed as reaching "cases where the FTCA itself does not provide a means of recovery," *id.*, and applied to a § 2680 exception.

The bar that would follow substitution here is of a different kind: not a limitation on recovery for a claim paragraph (1) covers, but the absence of any FTCA cause of action for a constitutional tort. *Meyer*, 510 U.S. at 477–78; *see id.* at 478–79 n.6. Congress addressed that class of claims not through § 2680 but through § 2679(b)(2)(A), which provides that paragraph (1) "does not extend or apply" to them. The question here is therefore antecedent to *Smith*'s: whether paragraph (2)(A) removes this action from paragraph (1) at all. *Smith* itself recognized

that the (b)(2) exceptions preserve constitutional claims against the employee. 499 U.S. at 166–67.

## IV. SCOPE OF EMPLOYMENT NEED NOT BE DECIDED, AND THE GOVERNMENT'S SCOPE EMPHASIS ONLY CONFIRMS THAT THIS IS "A CIVIL ACTION AGAINST AN EMPLOYEE OF THE GOVERNMENT."

The Court need not decide scope at all. If § 2679(b)(2)(A) covers this action, substitution is unavailable *whatever* the scope answer, because the exception turns on what the action is "brought for," not on where the conduct fell along the *respondeat-superior* line. That is why Mr. Khan assumes scope *arguendo* for purposes of this motion, and why no evidentiary hearing, scope discovery, or credibility finding should delay decision. The assumption is not a concession. Should the Court conclude that § 2679(b)(2)(A) does not reach this action, Mr. Khan respectfully requests leave to contest the certification on the merits before any order of substitution enters — by an opposition alleging the relevant facts with particularity under *McHugh*, 966 F.2d at 74, with such limited discovery as the Court permits and, if material facts are disputed, the evidentiary hearing *Fountain* contemplates, 838 F.3d at 134, 137–38. Deciding the statutory question first serves the Court and both parties: if Mr. Khan is right, the scope question never arises; if he is wrong, it is decided once, on an appropriate record.

The government's emphasis on scope confirms rather than defeats the exception's application. The exception applies to "a civil action against *an employee of the Government*" (emphasis added) — it presupposes an employee acting in an employment-connected capacity, which is the only circumstance in which certification and substitution are ever in play. The Supreme Court has said as much: the FTCA is not the exclusive remedy for in-scope torts when the plaintiff brings an action "seeking damages for a constitutional violation by a Government employee," *Smith*, 499 U.S. at 167; subparagraph (A) is addressed to paragraph (1)'s immunity — the immunity for in-scope conduct — and to nothing else, *Hui*, 559 U.S. at 809; and under the

Supreme Court's precedents, scope alone did not immunize a federal officer before the Act, *Westfall*, 484 U.S. at 296, 299. In-scope conduct is the setting in which the exception does its work, not a reason to disregard it.

"Under color of" federal law points the same way. It is the pleaded element of Section 1(a), Compl. ¶¶ 4, 29, tracking the § 1983 formulation whose construction the Act adopts, § 1(c). The government's own notice repeats it in summarizing the Complaint, ECF No. 1 ¶ 3 ("acting under color of federal law"), and the government has certified that Officer Uccello "was acting within the scope of federal office or employment," ECF No. 1-1 at 2. In the § 1983 tradition, action under color of law — including "[m]isuse of power, possessed by virtue of state law," *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)) — is the predicate of individual constitutional-tort liability, not a defense to it.

Congress legislated in 1988 against that settled backdrop. In paragraph (b)(1) it chose to convert one class of individual-capacity suits — those for the "negligent or wrongful act or omission" of an employee acting within scope — into suits against the United States; in paragraph (b)(2)(A) it declined, in terms, to do so for civil actions "brought for a violation of the Constitution." The Court has since read the same words the same way.

When Congress borrowed them for another remedial statute, the Court gave them their § 1983 meaning: "[a] suit against an official in his personal capacity is a suit against a person acting under color of law." *Tanzin*, 592 U.S. at 48. And when a state officer argued that acts within her official authority were acts of the State that could not support a personal-capacity action, the Court answered that "[t]he requirement of action under color of state law means that [the officer] may be liable . . . precisely because of her authority," and refused to "accept the novel proposition that this same official authority insulates [her] from suit." *Hafer v. Melo*, 502

U.S. 21, 27–28 (1991). The harder the government insists that Officer Uccello acted within his federal employment, the more squarely this is "a civil action against an employee of the Government . . . brought for a violation of the Constitution of the United States."

## V. NO CERTIFICATION ADDRESSES DEFENDANTS DOES 1–6, AND NO SUBSTITUTION CAN OCCUR AS TO THEM.

The certification finds only that "Nicholas J. Uccello was acting within the scope of federal office or employment . . . ." ECF No. 1-1 at 2. The Notice of Substitution substitutes the United States "for defendant Nicholas J. Uccello," ECF No. 2 at 1, and the tendered order dismisses Counts I–III "with respect to defendant Nicholas J. Uccello," ECF No. 2-2 — and its second decretal paragraph would amend the caption "to reflect the substitution of the United States as the defendant," *id.*, in the singular, as though no individual defendant remained. No certification addresses the six unnamed defendants, each sued in an individual capacity, for whom the United States Attorney nonetheless appeared in the Superior Court on the day of removal. *See* Appearance, *Khan v. Uccello*, No. HHD-CV26-6228240-S (Conn. Super. Ct. Aug. 25, 2026) (Exhibit C) (appearance of the United States Attorney for "All Defendants," listing "D-01 NICHOLAS J. UCCELLO" and "D-02 SIX UNKNOWN NAMED AGENTS OF US IMMIGRATION AND CUSTOMS EN[FORCEMENT]"). Whatever the disposition of this motion, the claims against Does 1–6 remain individual-capacity claims untouched by any substitution, and any order should say so expressly.

## CONCLUSION

The Motion to Substitute Party (ECF No. 2) should be denied. The Court should hold expressly that this is "a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A), to which § 2679(b)(1) does not extend or apply, whatever the scope of Officer Uccello's employment. It

should confirm that no substitution has occurred as to any defendant and that the action proceeds against them as pleaded. And it should reject the proposed order tendered at ECF No. 2-2. The Court should further direct the United States to state in its reply whether the FTCA provides any remedy for a deprivation of rights secured by the Constitution, the only wrong the Complaint pleads (Part III, *supra*). Should the Court conclude that § 2679(b)(2)(A) does not reach this action, Mr. Khan requests leave to contest the certification on the merits before any order of substitution enters (Part IV, *supra*). Mr. Khan respectfully requests oral argument.

Respectfully submitted,

/s/ Alexander T. Taubes
Alexander T. Taubes
Fed. Bar No. ct30100
470 James Street, Suite 007
New Haven, CT 06513
Tel: (203) 909-0048
alextt@gmail.com
Counsel for Plaintiff Saifullah Khan