**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SAIFULLAH KHAN,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS J. UCCELLO, *et al.*,<br><br>Defendants. | Civil Action No.: 3:26-cv-01365<br><br>Judge: Hon. Vernon D. Oliver<br><br>Magistrate Judge: |

**DEFENDANT UNITED STATES OF AMERICA'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS NOTICE OF SUBSTITUTION**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director, Torts Branch

<u>*/s/ John B. F. Martin*</u>
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

*/s/ Matthew M. Brotz*
MATTHEW M. BROTZ
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 451-7481
Email: matthew.brotz@usdoj.gov

Defendant United States of America respectfully submits this reply to Plaintiff's opposition to the United States' motion to substitute and in further support of the United States' filing. Plaintiff challenges the United States' substitution for Uccello, arguing the Westfall Act's *Bivens* exception bars substitution and immunity on his claims under Connecticut's Substitute Senate Bill No. 397, Public Act No. 26-14 ("SB 397"). Central to this challenge is 28 U.S.C. § 2679(b)(2)(A), which says the Westfall Act's immunity provisions do not apply to "a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A).[1] Plaintiff asserts that an action under SB 397 is "brought for a violation of the Constitution" because the state statutory claim imposes liability for violating the Constitution under color of federal or state law. *See* ECF No. 16 ("Opp."), at 5-23. But the Supreme Court has read § 2679(b)(2)(A) to except only *Bivens* claims from the Westfall Act, *see, e.g.*, *United States v. Smith*, 499 U.S. 160, 166-67 (1991). Courts have uniformly rejected Plaintiff's novel reading of this 38-year-old statute. No court has endorsed it. This Court should decline to be the first.

**A. Background of the Westfall Act.**

[1] Plaintiff correctly notes the United States mistakenly cited 28 U.S.C. § 2679(b)(2) in its proposed order. The United States apologizes for that error. Plaintiff's claims against Uccello are barred by subsection (b)(1). Plaintiff also notes the United States has not substituted itself for the John Doe defendants. That is because Plaintiff has not identified them. They are fictitious parties against whom no claims can proceed. Nor would substitution be appropriate. Relatedly, that government counsel marked a checkbox in state court indicating the filing was on behalf of all defendants, where counsel represents the government and its employees in their official capacity, says nothing about the notice being filed on behalf of employees in their individual capacity. Moreover, because the United States was not a party or a listed filer for this case in state court, counsel did not have the option to check a box to file on behalf of the United States in that court, leaving counsel to file the government's notice of substitution on behalf of the defendants in their official capacities. As the filed documents make clear, the notice of substitution and certification were filed on behalf of the United States. *See Khan v. Uccello*, Case No. HHD-CV26-6228240-S (Conn. Sup. Ct.), Docket Entry No. 103.00, Notice of Removal to Federal District Court.

The history of the Westfall Act refutes Plaintiff's argument because it shows Congress meant to eliminate federal employees' personal liability for state-law claims related to their federal duties and crafted a limited exception to its immunity provisions for *Bivens* claims only.

**i. Precursors to the Westfall Act.**

"Originally, the FTCA afforded tort victims a remedy against the United States, but did not preclude lawsuits against individual tortfeasors." *Levin v. United States*, 568 U.S. 503, 507 (2013). Over the decades, Congress acted to shield various classes of federal employees from the threat of personal liability, including via Westfall Act precursors like the Federal Drivers Act and a series of laws eliminating some liability for a variety of federal medical personnel. *See* Pub. L. 87-258, 75 Stat. 539 (previously codified as 28 U.S.C. § 2679(b)-(e) (1970 ed.)); Pub. L. 89-311, 79 Stat. 1156, 38 U.S.C. § 416 (1970 ed.), now codified at 38 U.S.C. § 7316; 84 Stat. 1870, Pub. L. 91-623, 42 U.S.C. § 233; Pub. L. 94-350, 90 Stat. 828, 22 U.S.C. § 817 (1982 ed.), now codified at 22 U.S.C. § 2702; Pub. L. 94-464, 90 Stat. 1985, now codified at 10 U.S.C. § 1089; Pub. L. 94-465, 90 Stat. 1988, 42 U.S.C. 2458a (1982 ed.), now codified at 51 U.S.C, § 20137; *see also Levin*, 568 U.S. at 507 n.2.

While expanding federal employees' immunity from state-law claims, Congress opted to leave *Bivens* alone. Specifically, after the Supreme Court's 1971 decision in *Bivens*, a number of bills were introduced in Congress at the Department of Justice's behest that would have made suit under the FTCA the exclusive remedy for persons injured by conduct of federal officers that was alleged to have violated the plaintiff's constitutional rights; none, however, was ever enacted. *See, e.g.*, *Carlson v. Green*, 446 U.S. 14, 20 (1980) (citing S. 695, 96th Cong., 1st Sess. (1979); H.R. 2659, 96th Cong., 1st Sess. (1979); S. 3314, 95th Cong., 2d Sess. (1978)); *Meshal v. Higgenbotham*, 804 F.3d 417, 427 (D.C. Cir. 2015). Congress's continuous expansion of

immunity from state-law claims via Westfall Act precursors and its declination of action on *Bivens* claims heralded the approach it would later take in the Westfall Act: provide broad immunity from individual-capacity damages claims established under state law, but decline to extend statutory immunity to *Bivens* actions established under federal law.

**ii. Enactment of the Westfall Act and the Supreme Court's Interpretation of the *Bivens* Exception.**

The Westfall Act was enacted in 1988 in the wake of the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which required a federal employee to show that his conduct was both in the scope of employment and in furtherance of a discretionary function to obtain immunity from state tort suits. *Westfall*, 484 U.S. at 299-300; *see also* Pub. L. 100-694, 102 Stat. 4563, codified at 28 U.S.C. §§ 2671, 2674, 2679(b) & (d). As explained in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995), the purpose of the Westfall Act was to override the Supreme Court's ruling in *Westfall* by eliminating *Westfall*'s discretionary function requirement and making scope of employment the only benchmark of the individual employee's immunity. *See Gutierrez de Martinez*, 515 U.S. at 425-26. The Act did this by making the remedy against the United States under the FTCA for injuries caused by the negligence or wrongdoing of any federal employee "while acting within the scope of his office or employment" "exclusive of *any other civil action or proceeding* for money damages by reason of the same subject matter *against the employee* whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1) (emphases added). The statute goes on to provide that "[*a*]*ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded*." *Id.* (emphasis added).

Congress took care, however, to ensure this expansive language would not be read to confer immunity on federal employees against whom *Bivens* suits were brought. Congress did so

by adopting § 2679(b)(2)(A), which carved out *Bivens* claims from the broad language of § 2679(b)(1) that otherwise made the FTCA remedy against the United States exclusive of "any other civil action" against the employee "by reason of the same subject matter." Had Congress not enacted § 2679(b)(2)(A), that language would have been broad enough to shield federal employees from *Bivens* claims. Hence the exception was meant to clarify that *Bivens* claims were unaffected. But it was not intended to preserve any individual-capacity state-law claims against federal employees, which the entire Act was designed to foreclose.

The Supreme Court has understood that § 2679(b)(2)(A) is a *Bivens*-only exception to Westfall Act immunity, as shown by its decision in *United States v. Smith*, 499 U.S. 160 (1991). In describing § 2679(b)(2), the *Smith* Court said this provision "declared that the FTCA is not the exclusive remedy for torts committed by Government employees within the scope of their employment when the injured plaintiff brings: (1) a *Bivens* action, seeking damages for a constitutional violation by a Government employee; or (2) an action under a federal statute that authorizes recovery against a Government employee." *Id.* at 166-67. Declining to infer the existence of a third exception to the Westfall Act's exclusivity provision, the Court noted that where Congress explicitly enumerates exceptions to a general prohibition, additional exceptions are not to be implied absent evidence of a contrary legislative intent. *Id.* at 167; *see also id.* at 173 ("When Congress wanted to limit the scope of immunity available under the [Westfall] Act, it did so expressly, as it did in preserving employee liability for *Bivens* actions and for actions brought under a federal statute authorizing recovery against the individual employee.").

The Supreme Court applied similar reasoning in *Hui v. Castaneda*, 559 U.S. 799, 806-07 (2010), which concerned 42 U.S.C. § 233(a). There, the Court compared § 233(a) to the Westfall Act and concluded that § 233(a) barred *Bivens* actions against PHS personnel for performing

medical duties because § 233(a) lacked what the Westfall Act expressly included: "[t]he Westfall Act's exception *for Bivens claims*," the absence of which was "powerful evidence that Congress did not understand the exclusivity provided by § 2679(b)(1)—or the substantially similar language of § 233(a)—to imply such an exception." *Hui*, 559 U.S. at 807 (emphasis added).

The Court's characterization of § 2679(b)(2)(A) as "the Westfall Act's *Bivens* exception," *id.* at 809-10, is consistent with the Act's proponents' conception of the statute when considering the bill that ultimately was enacted. The bill's sponsors, like the DOJ representative who testified in support of the legislation, explained that bills that had been proposed in *Bivens*'s wake to make the remedy under the FTCA the exclusive remedy for violations of the Constitution had been "controversial," and that the Westfall Act would have no effect on *Bivens* claims.[2] Thus, legislative history and Supreme Court precedent confirm the exception is for *Bivens* claims only, not state statutory claims stemming from allegedly unconstitutional conduct.

---

[2] *See, e.g.*, 134 Cong. 29414 (Oct. 7, 1988) (Sen. Charles Grassley) ("Mr. President, I would like to emphasize that this bill does not have any effect on the so-called *Bivens* cases or constitutional tort claims. Although this too is an area of concern to me—and I have introduced corrective legislation in the past—the bill that we pass today has no impact on these cases, which can continue to be brought against individual Government officials."). Similarly, the prepared statement of the DOJ representative who testified before the House Judiciary Committee stated:

> [This bill] would apply only to cases alleging injury caused by ordinary common law tortious conduct. . . . The term does not include, and [the bill] is not intended to apply to, cases that allege violations of constitutional rights, or what commonly are known as *Bivens* cases. . . .
>
> As this Subcommittee is aware, since *Bivens* was decided in 1971, the Department of Justice, under both Democratic and Republican Administrations, consistently has pursued legislation which would make a suit under the FTCA the exclusive remedy for persons injured by conduct alleged to violate constitutional rights. We recognize, however, that such legislation always has been somewhat controversial because of its constitutional rights dimension. And while our position on a *Bivens* bill remains the same, litigating *Bivens* cases will not much change as a result of *Westfall*. . . .

*Legislation to Amend the Federal Tort Claims Act: Hrg. Before Subcomm. on Admin. Law and Governmental Relations* of *H. Comm. on the Judiciary*, 100th Cong., 2d Sess. 78-79 (1988) (prepared statement Deputy Asst. Att'y Gen. Robert L. Willmore). Finally, in favorably reporting the bill, the House Judiciary Committee described the bill as providing that "the exclusive remedy expressly does not extend to so-called constitutional torts. *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Courts have drawn a sharp distinction between common law torts and constitutional or *Bivens* torts." H.R. Rep. 700, 100th Cong., 2d Sess. 5-6 (1988).

### B. Federal Courts Have Uniformly Understood § 2679(b)(2)(A) to Apply Only to *Bivens* Claims, Not State-Law Claims Such as "Converse-1983" Claims.

In the 38 years since the Westfall Act's enactment, federal courts have uniformly read the exception in § 2679(b)(2)(A) to apply only to *Bivens* claims. Plaintiff cites a non-binding concurrence opinion in the D.C. Circuit to argue the exception should extend to state-law claims involving allegedly unconstitutional conduct. *See Buchanan v. Barr*, 71 F.4th 1003, 1012-18 (D.C. Cir. 2023) (Walker, J., concurring). But the courts have uniformly rejected that concurrence and found the exception does not apply to claims, like Plaintiff's here, which proceed under a so-called "converse-1983" law, *i.e.*, a state statute which requires proof of a constitutional violation. *See Black Lives Matter D.C. v. Trump*, 2024 WL 3300158 at *4-10 (D.D.C. July 4, 2024) (exception inapplicable to D.C. First Amendment Assemblies Act claim); *Quinonez v. United States*, 2023 WL 5663156 at *2-3 (N.D. Cal. Aug. 30, 2023) (same for California Bane Act claims); *Estate of Mejia v. United States*, 2022 U.S. Dist. LEXIS 240035 at *7-9 (S.D. Cal. Dec. 2, 2022); *Ward v. Schaefer*, 2017 U.S. Dist. LEXIS 105750 at *6-8 (D. Mass. July 10, 2017) (same for Massachusetts Civil Rights Act claims); *see also Day v. Massachusetts Air Nat'l Guard*, 167 F.3d 678, 680-681 (1st Cir. 1999) (noting government had successfully substituted for individual defendants on all claims, including claims under Massachusetts Civil Rights Act). This Court should follow suit.[3]

The conclusion that § 2679(b)(2)(A) covers only *Bivens* claims draws further support from how courts have treated Westfall certifications in cases alleging overlapping state-law and *Bivens* claims. In some post-Westfall Act cases, plaintiffs argued that if they asserted both *Bivens*

[3] Courts have also found state-law torts based on unconstitutional acts do not fall under § 2679(b)(2)(A). *See Pompy v. First Merchs. Bank*, 2025 U.S. App. LEXIS 12703, at *26-27 (6th Cir. May 23, 2025); *Rise v. Bagshaw*, 2025 WL 1380478 at *12-17 (D.D.C. May 13, 2025); *Pearsons v. United States,* 723 F. Supp. 3d 825, 832 (C.D. Cal. 2024).

claims and state-law tort claims against the employee arising from the same unconstitutional conduct, then 28 U.S.C. § 2679(b)(2)(A) rendered the Westfall Act inapplicable to the entire action. Without exception, courts rejected this argument. *See, e.g.*, *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 76 (1st Cir. 2005); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 368, 370–71 (D.C. Cir. 1997); *Sudnick v. Dept. of Defense*, 474 F. Supp. 2d 91, 97 (D.D.C. 2007); *see also Rasul v. Myers*, 512 F.3d 644, 661 n. 11 (D.C. Cir.), *vacated*, 555 U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d 527 (D.C. Cir. 2009) (per curiam). Despite the overlap between state-law claims and *Bivens* claims, courts recognized that § 2679(b)(2)(A) applied only to the *Bivens* claims, not to the state-law claims. *See Henry v. Essex County*, 113 F.4th 355, 364 (3d Cir. 2024) ("The Westfall Act only offers two exceptions to its exclusivity—one for *Bivens* actions, and the other for actions under federal statutes. 28 U.S.C. § 2679(b)(2); *United States v. Smith*, 499 U.S. 160, 166-67, 111 S. Ct. 1180, 113 L. Ed. 2d 134 (1991). A suit under the [New Jersey Civil Rights Act] fits neither."); *cf. Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (*Bivens* remedy for alleged unconstitutional act was not required for private prison guards because state tort actions are available "against employees of a private firm," but "[p]risoners ordinarily cannot bring state-law tort actions against employees of the Federal Government") (citing 28 U.S.C. § 2671, 2679(b)(1) (Westfall Act)). These decisions further support substitution here.

**C. Plaintiff's Arguments for Striking the Certification Are Unavailing.**

Unable to cite any case barring Westfall Act immunity on converse-1983 claims, Plaintiff asserts that because SB 397 allegedly provides a state-law remedy but includes a federal constitutional violation as an essential element, it imposes liability directly under the U.S. Constitution, so that SB 397 claims are "brought for a violation of the Constitution" within the meaning of § 2679(b)(2)(A). *See* Opp. at 9-11. However, the Constitution does not create

liability for individual federal employees or cast them in damages outside the narrow scope of the few remaining approved *Bivens* claims. *See Abbasi*, 582 U.S. at 131-35. Thus, only *Bivens* claims can be brought against a federal employee "for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). By contrast, SB 397 relies on state law to create both liability and a remedy against individual officers because the state legislature crafted it, as a matter of state policy, to borrow federal constitutional standards and add federal and state color-of-law requirements, thereby defining a violation of *state law*. Indeed, as Plaintiff admits, it is "Section 1 of Substitute Senate Bill No. 397"—not the Constitution—"which makes every person . . . liable to the party injured" by his or her unconstitutional conduct. ECF No. 1-3, Complaint ¶ 2. Thus, SB 397 claims are brought for a violation of state law. *See* SB 397 § 1(a).

*FDIC v. Meyer*, 510 U.S. 471 (1994), cited by Plaintiff, is not to the contrary. There, the plaintiff tried to assert a *Bivens* claim directly against a government agency. *See id*. at 473. As a result, *Meyer* involved only the exclusivity provision of 28 U.S.C. § 2679(a)—inapplicable here—which provides that an FTCA claim is the exclusive remedy for a suit against a "federal agency" if the plaintiff's claim is "cognizable" under the FTCA's waiver of sovereign immunity pursuant to 28 U.S.C. § 1346(b). *See Meyer*, 510 U.S. at 473-79. The Court concluded that § 2679(a) did not apply because a *Bivens* claim was not "cognizable" under the FTCA. *See id*. at 477-79. The Court observed that the plaintiff's *Bivens* claim did not, as the FTCA requires, impose liability to the same extent as a "private person" or "in accordance with the law of the place" where the conduct occurred, *i.e.*, state law, because *Bivens* claims are federal-law claims establishing federal-law liability and a remedy directly under the Constitution itself. *See id*. at 478. But the Court said nothing about §§ 2679(b) and (d), nor about whether converse-1983 statutes establish liability in accordance with federal rather than state law. As explained above,

they do not, because they remain creatures of state law in all respects, despite their constitutional gloss. Even if there were some doubt on this conceptual point, the Court should look to Congress's specific words and intent in the Westfall Act to recognize that it used the phrase "brought for a violation of the Constitution" only to carve out *Bivens* claims from § 2679(b).

Plaintiff asserts that, based on *Meyer*, his claims cannot proceed under the FTCA and that substitution should therefore be denied. *See* Opp. at 20-21. Even assuming *arguendo* substitution would extinguish his claims—a point the Court need not decide now—the FTCA and the Westfall Act should not be rewritten to avoid that result. Congress intended the FTCA to be a narrow remedy and envisioned that its limited waiver of sovereign immunity and the Westfall Act's substitution provisions would extinguish many state-law claims, even those alleging unconstitutional acts. *See Smith*, 499 U.S. at 175 (Congress intended the exclusive remedy provision to leave some plaintiffs without remedy against the individual or the government based on exceptions to the FTCA's sovereign immunity waiver); *Lusk v. Merchant*, 182 F.4th 311, 325 (4th Cir. 2026) (similar, even where such a "result is quite harsh and rather shocking").

Plaintiff attempts to infer from § 2679(b)(2)(B)'s exemption of actions "brought for a violation of a statute of the United States *under which* such action against an individual *is otherwise authorized*," (emphases added), and § 2679(b)(2)(A)'s lack of similar "under which" language, that § 2679(b)(2)(A) exempts all claims labeled as constitutional torts, regardless of the source of the law authorizing the action. *See* Opp. at 8-9. But Congress added the quoted language to subparagraph B to clarify that the exception did not alter the usual construction of injunctive relief claims and would also cover both express and implied federal statutory claims. *See* H.R. Rep. 100-700, 7, 1988 U.S.C.C.A.N. 5945, 5950-51. The "otherwise authorized" language was omitted from subparagraph A, the *Bivens* exception, simply because subparagraph

A did not implicate the issues raised by the case law surrounding implied federal statutory causes of action. *See, e.g.*, *Piper v. Chris-Craft Industries*, 430 U.S. 1 (1977); *Transamerica Mortgage Advisors Inc. v. Lewis*, 444 U.S. 11 (1979); *Cort v. Ash*, 422 U.S. 66 (1975). Moreover, by providing another exception based on purely federal-law causes of action, subparagraph B reinforces Congress's intent to carve out only pure federal-law claims, like *Bivens* and federal statutory claims—not state statutory claims like Plaintiff's.

Plaintiff contends that *Tanzin v. Tanvir*, 592 U.S. 23 (2020), adopted his interpretation of 28 U.S.C. § 2679(b)(2)(A). *See* Opp. at 1. But *Tanzin* did not involve FTCA claims, Westfall Act substitution, or state statutory claims. *Tanzin* held that a federal employee may be sued in his individual capacity for violating the federal Religious Freedom Restoration Act ("RFRA"), because RFRA's phrase "appropriate relief" encompasses a damages remedy. *See Tanzin*, 549 U.S. at 45. In analyzing RFRA, the Supreme Court observed that, because there was some historical, pre-Westfall Act precedent for damages claims against individual state and federal officials, Congress could have considered a damages remedy as "appropriate" relief within the meaning of RFRA. *Id*. at 49. In that distinct context, the Court noted that a limited damages remedy against federal officials remained under RFRA, citing, as an example, the fact that "the Westfall Act foreclosed common-law claims for damages against federal officials, 28 U. S. C. § 2679, but it left open claims for constitutional violations and certain statutory violations. §§2679(b)(2)(A)-(B)." *Id*. The Court said nothing about "converse-1983" claims like Plaintiff's here, and it spoke in generalized terms about § 2679(b)(2), without seeking to define the specific scope of that statute, which was not before it. Hence, the Court's passing dictum in a completely unrelated context cannot support Plaintiff's reading of § 2679. Far more instructive is *Smith*, where the Supreme Court was called upon to interpret § 2679 and specifically described §§

2679(b)(2)(A)-(b)(2)(B) as exceptions "preserving employee liability for *Bivens* actions and for actions brought under a federal statute authorizing recovery against the individual employee." *Smith*, 499 U.S. at 173; *see also id*. at 167-68.

Finally, while he admits his reading of § 2679(b)(2)(B) would defeat the Westfall Act's central purpose of shielding federal employees from individual-capacity state-law claims, Plaintiff minimizes his attempt to gut the Act by claiming it would still immunize federal employees from common-law tort claims, even if states codify them via statute. *See* Opp. at 18. That is beside the point. Plaintiff's claim that Uccello used unlawful force is little different in practice from a state-law assault claim. By changing the label from an assault claim to a SB 397 claim, Plaintiff proposes to bring against a federal officer in his individual capacity the precise sort of state-law claim that the Act explicitly precludes. Under his approach, states could readily bypass the bar on state tort claims against federal employees by creatively codifying torts like assault or false arrest through cross-referencing violations of the Constitution. That is so even though Congress plainly intended to protect federal employees from such torts by authorizing the substitution of the United States for its employees on state statutory claims. *See* H.R. Rep. 100-700, 6, 1988 U.S.C.C.A.N. 5945, 5950 (immunity "encompasses traditional tort causes of action codified in state statutes that permit recovery for acts of negligence," including, for example, statutory wrongful death causes of action). To avoid thwarting the Act's purpose, this Court should disregard Plaintiff's empty assurances and join every court to decide the issue in rejecting his substitution challenge.[4]

[4] Although Plaintiff has moved to remand this case to state court, as noted in the United States' motion for excess pages and as will be further explained in opposition to remand, the remand motion is frivolous because it is foreclosed by binding Supreme Court precedent "hold[ing] that the Attorney General's certification is conclusive for purposes of removal, i.e., once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court." *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

## CONCLUSION

For the above reasons, Plaintiff's opposition to substitution should be denied.

Dated: September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director, Torts Branch

*/s/ John B. F. Martin*
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

*/s/ Matthew M. Brotz*
MATTHEW M. BROTZ
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 451-7481
Email: matthew.brotz@usdoj.gov

*Counsel for Defendant United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, the foregoing **United States of America's Reply Memorandum in Further Support of Its Notice of Substitution** was filed electronically and served upon all counsel of record through ECF/CM.

*/s/ John B. F. Martin*
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

*Counsel for Defendant United States*